UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-137-GWU

ARTHUR CASTLE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

3

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

      However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Arthur Castle, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of a seizure disorder.  (Tr. 15). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Castle retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 15-18).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 51, seventh grade education (but who was "basically illiterate") and work experience as a logger, plumber, and tobacco farmer could perform any jobs if he were limited to "medium" level exertion, with the additional restrictions of requirements to avoid all hazards and never climb ladders, ropes, or scaffolds.  (Tr. 222-3).  The VE responded that there were jobs that such a person could perform at the medium, light, and sedentary levels, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 223).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

08-137 Arthur Castle

Mr. Castle alleged disability due to a seizure disorder, heart problems, and an inability to read. (Tr. 62). He testified that he would have "spells" where he would not know what he was doing. (Tr. 210). For instance, he could be driving and would not know where he was or how to get home. (Id.). The spells happened approximately twice a week. He did not know how long his blackouts lasted but thought it was just a few minutes. (Tr. 211-12). He also testified to nervousness and irritability, but he was able to get along with his family. (Tr. 213-14). He had been on nerve medications at one time, but had stopped taking them. (Tr. 215). The nervousness started at about the same time as his blackout spells, and both had been going on at least three years, as of the August 16, 2007 hearing. (Tr. 216-17). He had been on the medication Dilantin and did not think that he had blackouts as often, but had not taken it in three months because of lack of money. (Tr. 219-20).

The amount of relevant medical information submitted by the plaintiff is very limited. Office notes from the Hope Family Medical Center reflect that Mr. Castle was seen on October 24, 2005 for a complaint of passing out while driving. (Tr. 183). His examination was normal except for an electrocardiogram which showed a rapid heartbeat and multiple premature ventricular contractions. The diagnosis was a "syncopal episode." (Tr. 183). On follow-up, the physician noted that a CT scan and a carotid duplex study were unremarkable. (Tr. 181). In January, 2006, the physician stated that the work-up had been negative and the plaintiff stated that

he had not had any episodes recently. (Tr. 179). A questionable seizure disorder was diagnosed and Dilantin was prescribed. On follow-up, Mr. Castle reported that he had been taking his medicine, was "doing fine," and had had no syncopal episodes or passing out. (Tr. 177). On two further visits in 2006, in March and October, he denied any seizure activity. (Tr. 164, 173).

The only medical opinion regarding restrictions was made by a state agency reviewer, Dr. Carlos Hernandez, who opined that there were no exertional restrictions, but that Mr. Castle should never climb ladders, ropes, or scaffolds or work around hazards such as machinery or heights due to his seizure disorder. (Tr. 156-62). The residual functional capacity found by the ALJ and presented in the hypothetical question was consistent with this uncontradicted opinion.

On appeal, the plaintiff's only argument is that the ALJ committed error in failing to consider a Third Party Function Report completed by the plaintiff's wife, Faye Castle. (Tr. 108-117). The plaintiff points specifically to Mrs. Castle's statement that: "Hee has trouble with memory and concentration because he takes spells and gets confused about where he is at." (Tr. 114). The plaintiff asserts at some length that evidence from non-medical sources must be evaluated by the ALJ, citing in particular Social Security Ruling (SSR) 06-3p.

SSR 06-3p notes that the Commissioner's regulations at 20 C.F.R. § 416.913(d) indicate that spouses are included as "other sources" whose evidence may be used by the Commissioner to show the severity of an individual's

08-137 Arthur Castle

impairment and how it affects the individual's ability to function. The plaintiff correctly notes that the ALJ did not mention Mrs. Castle's statement or explain the weight that he gave it.

While lay testimony must be given perceptual weight where it is fully supported by reports of treating physicians, Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1054 (6th Cir. 1983), no treating physician gave any opinion regarding functional capacity in the present case. To the extent that Mrs. Castle's statements[1] confirmed that the plaintiff had a seizure disorder, there is no issue, since the ALJ made that finding. Moreover, SSR 06-3p goes on to state that " . . . there is distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision . . ." Id. at 15 (emphasis added). The ruling states only that "the adjudicator generally should explain the weight given to opinions from [the] 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of a case." Id. at 15-16.

In the present factual situation, it is difficult to see what effect Mrs. Castle's statement would have on the outcome of the case, when the plaintiff has failed to produce even one medical opinion that he is more physically restricted than found

---

[1] She did not testify at the hearing.

10

by the ALJ, and when the bulk of the medical evidence states that he was seizure-free for an extended period while taking his medications. The ALJ found the plaintiff's credibility to be "fair," but was unable to find that he was limited to the extent alleged in his testimony due to the lack of corroborating medical evidence. (Tr. 16). Thus, his reasoning in considering the plaintiff's subjective statements was clear, and would be equally applicable to Mrs. Castle's statement.[2]

The decision will be affirmed.

This the 29th day of April, 2009.

Signed By:

*G. Wix Unthank*

United States Senior Judge

---

[2] The plaintiff correctly notes that in Cruse v. Commissioner of Social Security, 502 F.3d 532 (6th Cir. 2007) the Sixth Circuit found that SSR 06-3p would have required the ALJ to specifically discuss his reasoning in rejecting a nurse practitioner's assessment, if it had been in effect at the time of the decision in the case. Id. at 541. In Cruse, however, the opinion being discussed was that of a treating nurse practitioner regarding the plaintiff's ability to work.